## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Carla Paul, | Case No. 0:09-cv-01102-DSD-AJB |
| Plaintiff, | |
| v. | Experian Information Solutions, Inc's Memorandum in Support of its Motion for Summary Judgment |
| Experian Information Solutions, Inc., et al, | |
| Defendants. | |

## DEFENDANT EXPERIAN INFORMATION
## SOLUTION INC'S MEMORANDUM IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................... 3

    A.    Experian's Role As A Credit Reporting Agency ......................... 3

    B.    Experian's Procedures For Providing Consumers With Copies
        Of Their Credit Files And For Conducting Reinvestigations ..................... 4

    C.    Plaintiff Contacts Experian To Request A Reinvestigation ......................... 5

    D.    Experian Reinvestigates Plaintiff's Dispute .................................. 6

    E.    Plaintiff Files Lawsuit Against Experian And U.S. Bank ........................... 7

III.   STANDARD FOR SUMMARY JUDGMENT ...................................................... 7

IV.   ARGUMENT ....................................................................................... 8

    A.    Experian Is Entitled To Summary Judgment Because Plaintiff
        Has Failed To Establish That Experian Published Inaccurate
        Information ...................................................................... 8

    B.    Plaintiff Has Failed To Adduce Any Evidence Of Willfulness
        To Support Her Claim For Punitive Damages ......................... 14

V.    CONCLUSION .................................................................................. 17

## TABLE OF AUTHORITIES

Page

CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........................................................................... 8

Carvalho v. Equifax Info. Servs., LLC,
588 F. Supp. 2d 1089 (N.D. Cal. 2008) ............................................ 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........................................................................... 8

Cornock v. Trans Union LLC,
638 F. Supp. 158 (D.N.H. 2009) ................................................. 10, 14

Dauster v. Household Credit Servs.,
396 F. Supp. 2d 663 (E.D. Va. 2005) ......................................... 11, 14

DeAndrade v. Trans Union LLC,
523 F.3d 61 (1st Cir. 2008) ...................................... 2, 9, 11, 12, 14

Edeh v. Midland Credit Mgmt., Inc.,
No. 09-CV-1706, 2010 U.S. Dist. LEXIS 103888 (D. Minn. Sept. 29, 2010) ........ 2, 11

Fashakin v. Nextel Communs.,
No. 05-CV-3080, 2009 U.S. Dist. LEXIS 25140 (E.D.N.Y. Mar. 25, 2009) .............. 11

Konter v. CSC Credit Servs.,
606 F. Supp. 2d 960 (W.D. Wis. 2009) ...................................... 15

Krenik v. County of Le Sueur,
47 F.3d 953 (8th Cir. 1995) ........................................................... 8

Kuehling v. Trans Union, LLC,
137 Fed. Appx. 904 (7th Cir. 2005) ......................................... 2, 10

Leidig v. Honeywell, Inc.,
850 F. Supp. 796 (D. Minn. 1994) ................................................ 8

McKinley v. CSC Credit Servs.,
No. 05-2340, 2007 U.S. Dist. LEXIS 34528 (D. Minn. May 10, 2007) ...................... 14

Rambarran v. Bank of Am., N.A.,
    609 F. Supp. 2d 1253 (S.D. Fla. 2009) ........................................................ 15

Rath v. Selection Research, Inc.,
    978 F.2d 1087 (8th Cir. 1992) .................................................................... 8

Safeco Ins. Co. of Am. v. Burr,
    551 U.S. 47 (2007) ...................................................................................... 15

Schmitt v. Chase Manhattan Bank, N.A.,
    No. 03-3295, 2005 U.S. Dist. LEXIS 18029 (D. Minn. Aug. 23, 2005) ...................... 8

Spence v. TRW,
    92 F.3d 380 (6th Cir. 1996) ........................................................................ 10

**STATUTES**

15 U.S.C. § 1681e(b) ......................................................... 1, 8, 9, 10, 11

15 U.S.C. § 1681i ..................................................... 4, 9, 10, 11, 14

15 U.S.C. § 1681i(a) ........................................................................... 1

15 U.S.C. § 1681i(a)(1)(A) ............................................................... 10

15 U.S.C. 1681i(a)(2)(A) .................................................................. 15

15 U.S.C. § 1681n ...................................................................... 14, 15, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ............................................................................... 7

Fed. R. Civ. P. 56(c) ......................................................................... 8

## I.    INTRODUCTION

Plaintiff Carla Paul claims that Experian Information Solutions Inc. violated the Fair Credit Reporting Act when it reinvestigated a dispute she submitted in May 2008. Specifically, Plaintiff alleges that by failing to forward a copy of a letter she had sent to Experian, which was purportedly from a creditor, to the creditor itself during the reinvestigation process, Experian violated 15 U.S.C. § 1681e(b) and 1681i(a).

In May 2008, Plaintiff mailed a dispute letter to Experian seeking a reinvestigation of several months of delinquent payment history that Experian had been reporting in association with her account at U.S. Bank.  Along with her dispute letter, Plaintiff sent to Experian another letter, purportedly authored by a Branch Manager at U.S. Bank, which stated that the account should never have been reported as past due and that any late payments should be removed.  Experian immediately reinvestigated Plaintiff's dispute by contacting U.S. Bank through an Automated Consumer Dispute Verification Form. On the form, Experian summarized the information contained in the letter purportedly authorized by the U.S. Bank Branch Manager, including the name and contact information that had been provided for the Branch Manager, and asked U.S. Bank to verify the status of the account.

In June 2008, U.S. Bank responded to Experian by verifying that the delinquent payment history being reported by Experian was accurate.  Experian promptly communicated the results of its reinvestigation to Plaintiff.

Plaintiff now brings this lawsuit seeking damages, which she claims she sustained as a result of Experian's purportedly deficient reinvestigation procedures.  She has made

clear through her written discovery responses and her deposition testimony, however, that she cannot prove that Experian's reporting was actually inaccurate.  In fact, she freely admits that she was late in making payments on the disputed U.S. Bank account.  Further, she concedes that she has no account statements or other evidence to prove that the delinquent payment history reported by Experian and verified by U.S. Bank was inaccurate.

Plaintiff cannot sustain her Fair Credit Reporting Act claims, as a matter of law, unless she can prove that Experian's reporting of the U.S. Bank account was inaccurate.  See Edeh v. Midland Credit Mgmt., Inc., No. 09-CV-1706, 2010 U.S. Dist. LEXIS 103888, at *21-*22 (D. Minn. Sept. 29, 2010); DeAndrade v. Trans Union LLC, 523 F.3d 61, 66-68 (1st Cir. 2008); Kuehling v. Trans Union, LLC, 137 Fed. Appx. 904, 908 (7th Cir. 2005).  Because she admits that she cannot do so, Experian's Motion for Summary Judgment should be granted.

Finally, Plaintiff is also seeking recovery of punitive damages as a result of Experian's purportedly "willful" violations of the Fair Credit Reporting Act.  Plaintiff has not adduced any evidence to support such a finding.  Rather, in support of her claim of willfulness, she merely reasserts the allegations in her Complaint without providing any additional evidentiary support.  Due to Plaintiff's inability to substantiate her punitive damages claim, Experian is entitled to summary judgment on this issue as well.

## II.   STATEMENT OF FACTS

### A.   Experian's Role As A Credit Reporting Agency

Experian Information Solutions Inc. ("Experian") operates as a consumer credit reporting agency pursuant to the Fair Credit Reporting Act ("FCRA").  (Affidavit of Kimberly ("Hughes Aff.") ¶ 5.)[1]  As a consumer credit reporting agency, Experian acts as a conduit of credit information that is pertinent to prudent credit granting and related decisions.  (Id.)  Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions.  (Id.)  Thus, Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit.  (Id.)  Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.  (Id.)

Experian essentially acts as a storehouse of credit information by storing, retrieving, and furnishing data as allowed by the FCRA.  (Id. ¶ 6.)  Credit grantors report credit information to Experian called "trade lines" that consist of credit account information such as account number, account status, and balance information.  (Id.)  Along with the trade lines, credit grantors report certain consumer identifying information associated with the trade line.  (Id.)  After the credit data is received by Experian and before it is added to a consumer's credit file, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported.  (Id. ¶ 7.)  Automated procedures are designed to make certain

---

[1] Ms. Hughes' affidavit may be found in Experian's Appendix of Affidavits and Exhibits filed contemporaneously with this Memorandum at Exhibit B.

that no information that would violate the prescriptions of the FCRA or similar state statutes will be reported on any consumer's credit report.  (Id.)

Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information.  These procedures include (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports.  (Id. ¶ 8.)

### B.   Experian's Procedures For Providing Consumers With Copies Of Their Credit Files And For Conducting Reinvestigations

Recognizing that no system can be entirely flawless, Experian has developed detailed procedures for providing consumers with access to their credit files and means to request reinvestigations if they disagree with items appearing in their credit files. (Id. ¶ 9.)  Experian has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports.  (Id.)

Consumers who disagree with the accuracy or completeness of any items of credit information reported in their credit file can dispute those items directly with Experian, pursuant to 15 U.S.C. § 1681i.  (Id. ¶ 10.)  Experian does not have access to creditors' records.  (Id. ¶ 11.)  Therefore, Experian generally reinvestigates disputed items by contacting the furnishers of the disputed information, explaining the consumer's disputes,

and asking for a response concerning the accuracy of the disputed items.  (Id.)  When a consumer disputes an item on her credit report, Experian sends (either manually or electronically) to the creditor a "Consumer Dispute Verification" (if manually, "CDV" and if automatically, "ACDV").  The CDV identifies the consumer and the basis for her dispute and asks the creditor to "verify" the information reported.  (Id.)  The creditor then returns the CDV to Experian, instructing Experian either to leave the item as it is, to delete the item, or to change it in some specified manner.  (Id.)  Experian acts accordingly, and then sends the consumer a summary reflecting the results of the investigation.  (Id.)  At the conclusion of the investigation, consumers are advised of the results of Experian's investigation.  Results of an investigation typically are reported by sending the consumer a summary reflecting the status of the items disputed following Experian's investigation.  (Id. ¶ 12.)

### C.   Plaintiff Contacts Experian To Request A Reinvestigation

On June 2, 2008, Experian received a letter from Plaintiff dated May 30, 2008 ("Plaintiff's Dispute Letter") disputing the potentially negative entry on Experian's report as it related to her credit card account with U.S. Bank ending in 8346 (the "U.S. Bank Account").  (Hughes Aff. ¶ 14; Deposition of Kimberly Hughes ("Hughes Dep.") at 13:3-6, 13:13-19 & Dep. Ex. 2.)[2]  At the time of Plaintiff's dispute, U.S. Bank had been reporting to Experian that the U.S. Bank Account had previously been past due.  (Hughes Aff. ¶ 15; see also Plaintiff's Complaint ("Compl.") ¶¶ 5-6 [Doc. No. 1].)

---

[2] Ms. Hughes' deposition transcript and its accompanying exhibits may be found in Experian's Appendix of Affidavits and Exhibits at Exhibit C.

Along with Plaintiff's Dispute Letter, Plaintiff sent to Experian another letter,

purportedly from a U.S. Bank Branch Manager named Damon Laliberte (the "U.S. Bank

Letter"), which was addressed "To Whom It May Concern" and was dated May 6, 2008.

(Hughes Aff. ¶ 16; Hughes Dep. at 13:20-24 & Dep. Ex. 2.)  The U.S. Bank Letter stated:

"Any negative credit bureau reporting made by U.S. Bank N.A. on [the U.S. Bank

Account] in the name of [Plaintiff] is the result of bank error.  This account should never

have reported as past due.  Please remove any late payment reporting."  (Hughes Aff. ¶

16; Hughes Dep. Ex. 2.)

### D.   Experian Reinvestigates Plaintiff's Dispute

Upon receipt of Plaintiff's Dispute Letter and the U.S. Bank Letter, on June 9,

2008, Experian commenced a reinvestigation of Plaintiff's dispute by sending an ACDV

to U.S. Bank.  (Hughes Aff. ¶ 17; Hughes Dep. at 25:19-21, 30:22-31:2 & Dep. Ex. 5.)

In the "Dispute Reason" box of the ACDV, Experian summarized the U.S. Bank letter as

follows:  "106 – Disputes present/previous Account Status, History.  Verify Accordingly.

LTR FROM DAMON LALIBERTE SAYING ACCT SHOULD NEVER HAVE BEEN

PAST DUE.  CONTACT [the phone number given for Damon Laliberte on the U.S.

Bank Letter]."  (Hughes Aff. ¶ 17; Hughes Dep. Ex. 5.)

On June 18, 2008, U.S. Bank responded to Experian via ACDV and told Experian

that it should change its reporting of the U.S. Bank Account to paid in full rather than

open, but that the past delinquencies being reported on the account for August,

September, and October 2007 were accurate.  (Hughes Aff. ¶ 18; Hughes Dep. at

35:7-15, 36:18-37:3, 48:12-17 & Dep. Ex. 5.)  In accordance with U.S. Bank's response,

Experian changed its reporting of the U.S. Bank Account to show that the account was currently paid in full, but, Experian continued to report the past delinquencies from 2007, as verified by U.S. Bank.  (Hughes Aff. ¶ 19; Hughes Dep. at 48:24-25.)  On June 18, 2008, Experian sent the results of its investigation to Plaintiff, which showed that the U.S. Bank Account had been updated but that the delinquent payment history remained. (Hughes Aff. ¶ 20; Compl. ¶ 12; Deposition of Carla B. Paul ("Plaintiff Dep.") Ex. 12.)[3]

### E.   Plaintiff Files Lawsuit Against Experian And U.S. Bank

Plaintiff filed this lawsuit against Experian and U.S. Bank on May 11, 2009. (See Compl.)  In her Complaint, Plaintiff alleges that Experian "prepared, compiled, issued, assembled, and communicated inaccurate, erroneous, blatantly false information regarding Plaintiff," and that Experian "falsely stat[ed] that Plaintiff had been past due" and "that she had made late payments" on the U.S. Bank Account.  (Id. ¶¶ 17,24.)

Despite the allegations in her Complaint, Plaintiff freely admits that she was late in making payments on the U.S. Bank Account, and that she does not have any information that proves she was not late.  (Plaintiff's Supplemented Answers to Defendant Experian's Interrogatories No. 14[4]; Plaintiff Dep. at 125:1-127:25, 129:19-130:3, 130:25-131:7, 134:4-135:2, 137:11-23, 138:5-22.)

## III.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure dictates that where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter

---

[3] Plaintiff's deposition transcript and its accompanying exhibits may be found in Experian's Appendix of Affidavits and Exhibits at Exhibit D.

[4] Plaintiff's Supplemented Answers to Defendant Experian's Interrogatories may be found in Experian's Appendix of Affidavits and Exhibits at Exhibit E.

of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A fact

is "material" if it may affect the outcome of the suit under governing law.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is

sufficient evidence such that a reasonable jury could return a verdict for the nonmoving

party.  <u>Id.</u>

      Summary judgment is a means of isolating and disposing of all claims or defenses

that are either factually unsupported or based on undisputed facts.  <u>Leidig v. Honeywell,</u>

<u>Inc.</u>, 850 F. Supp. 796, 800 (D. Minn. 1994).  The nonmoving party may not "rest on

mere allegations or denials, but must demonstrate on the record the existence of specific

facts which create a genuine issue for trial."  <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953,

957 (8th Cir. 1995).  A plaintiff opposing summary judgment cannot "get to a jury

without any significant probative evidence tending to support the complaint."  <u>Rath v.</u>

<u>Selection Research, Inc.</u>, 978 F.2d 1087, 1091 (8th Cir. 1992).

## IV.   ARGUMENT

### A.   Experian Is Entitled To Summary Judgment Because Plaintiff Has Failed To Establish That Experian Published Inaccurate Information.

      To sustain a claim under 15 U.S.C. § 1681e(b), a plaintiff must demonstrate that:

(1) *inaccurate* information was included in a consumer's credit report; (2) the *inaccuracy*

was due to defendant's failure to follow reasonable procedures to assure maximum

possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was

caused by the inclusion of the *inaccurate* entry.  <u>Schmitt v. Chase Manhattan Bank, N.A.</u>,

No. 03-3295, 2005 U.S. Dist. LEXIS 18029, at *10 (D. Minn. Aug. 23, 2005) (citations

omitted) (emphasis added).  Similarly, § 1681i requires that a plaintiff prove:

(1) plaintiff's credit file contained *inaccurate* or incomplete information; (2) plaintiff had

notified the credit reporting agency directly of the *inaccurate* or incomplete information;

(3) plaintiff's dispute is not frivolous or irrelevant; (4) the credit reporting agency failed

to respond to her dispute; (5) the credit reporting agency's failure to reinvestigate caused

Plaintiff to suffer damages; (6) plaintiff has suffered actual damages.  Carvalho v.

Equifax Info. Servs., LLC, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008) (emphasis

added) (noting that "a majority of courts interpreting § 1681i have adopted [an

inaccuracy] requirement in light of the FCRA's purpose, which is to protect consumers

against the compilation and dissemination of *inaccurate* credit information").

It is well-established that a prima facie case under both § 1681e(b) or 1681i

requires a plaintiff to prove that the information published by the credit reporting agency

was in fact inaccurate.  See, e.g., DeAndrade 523 F.3d at 66-68.  In DeAndrade, a

consumer sued Trans Union alleging a § 1681i violation because Trans Union failed to

remove negative reporting relating to his mortgage financing after he submitted a letter

and proof documents to Trans Union disputing the information.  Id. at 61.  Upon receipt

of the dispute letter an proof documents, Trans Union sent an ACDV to the creditor,

Keybank, who then verified the delinquent payment history that Trans Union had been

reporting.  Id. at 64.  The court evaluated the plaintiff's § 1681i claim by first noting that

the plaintiff and Keybank were currently in litigation to resolve a dispute over the validity

of Keybank's mortgage.  However, because Keybank did in fact have documentation

granting it a mortgage that required the plaintiff to make payments that had not been

made, the court held that the delinquent payment history reported by Trans Union was accurate for FCRA purposes.  Id. at 67-69 (holding that to determine whether information is accurate under the FCRA, the relevant inquiry is "whether the defendant credit bureau could have uncovered the inaccuracy if it had reasonably reinvestigated the matter") (internal quotation marks omitted); see also Cornock v. Trans Union LLC, 638 F. Supp. 158, 167 (D.N.H. 2009) (granting summary judgment to credit reporting agency on plaintiff's § 1681i claim because an investigation by the agency beyond the creditor's verification of disputed account information would not have uncovered an inaccuracy; thus, no inaccuracy existed for FCRA purposes).  The court then analyzed whether § 1681i does in fact require proof of an inaccuracy.  In deciding the issue, the court first held that § 1681(e)(b) claims require proof of an inaccuracy.  Id. at 66 ("[T]o prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an actual inaccuracy.")  Then, after a thorough analysis of the purpose of the FCRA and the treatment of § 1681i claims across jurisdictions, the court held that § 1681i, like § 1681e(b), also requires proof of an inaccuracy.  Id. at 67-68.  ("[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail. . . . We find the reasoning of the majority of other appellate courts persuasive.").  Thus, the court affirmed summary judgment for Trans Union because the plaintiff had failed to make the requisite showing of inaccuracy.  See also Kuehling, 137 Fed. Appx. at 908 ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, [plaintiff] cannot establish that Trans Union violated the FCRA--either § 1681e(b) or § 1681i(a)(1)(A)."); Spence v.

TRW, 92 F.3d 380, 382 (6th Cir. 1996) (holding that plaintiff could not prevail on his § 1681e(b) claim "without proving the information in question was inaccurate"); Fashakin v. Nextel Communs., No. 05-CV-3080, 2009 U.S. Dist. LEXIS 25140, at *40 (E.D.N.Y. Mar. 25, 2009) ("A plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer reporting agency had failed to reasonably reinvestigate a disputed item."); Dauster v. Household Credit Servs., 396 F. Supp. 2d 663, 666 (E.D. Va. 2005) (granting Experian's Motion for Judgment on the Pleadings on § 1681e(b) claim because, although plaintiff disputed whether she should be required to make payments to creditor for defective sofa, she conceded that she had entered into agreement with creditor and stopped making payments; thus, Experian had not reported any inaccuracies).

This District recently adopted the First Circuit's interpretation of the FCRA espoused in DeAndrade, and extended its holding even further to require a plaintiff to show proof of an inaccuracy to sustain claims against furnishers of information. See Edeh v. Midland Credit Mgmt., Inc., No. 09-CV-1706, 2010 U.S. Dist. LEXIS 103888, at *17-*22 (D. Minn. Sept. 29, 2010).  In Edeh, this Court held that "[i]f the [Credit Reporting Agency] . . . conducts an investigation, that investigation results in verification of the completeness and accuracy of the challenged information, and the challenged information is, in fact complete and accurate," then § 1681i has not been violated.  Id. at *22-*23 ("[I]t is difficult to see how a plaintiff could prevail on a claim for damages based on an unreasonable investigation of disputed data without a showing

that the disputed information . . . was, in fact, inaccurate.") (quoting <u>DeAndrade</u>, 523 F.3d at 67) (emphasis in original, internal quotation marks omitted).

In this case, Experian is entitled to summary judgment because plaintiff has admitted that she was late in making payments to U.S. Bank, and that she cannot prove that any of the delinquent payment history reported by Experian in association with the U.S. Bank Account was inaccurate.  Experian first provided Plaintiff with an opportunity to deny the reported negative payment history in its January 23, 2010 interrogatories to Plaintiff.  Interrogatory No. 14 asked Plaintiff to "[i]dentify any instances in which Plaintiff was late in making payments for [the U.S. Bank Account.]"  Plaintiff's response stated:  "To the best of Plaintiff's knowledge she was not late.  However, Plaintiff does not have access to that information any longer."  (Plaintiff's Supplemented Answers to Defendant Experian's Interrogatories No. 14, Appendix <u>Exhibit</u> <u>E</u>.)

At her December 6, 2010 deposition, Plaintiff was given multiple opportunities to expand upon or clarify this response.  After first claiming that she could not remember if she had ever made less than the minimum payment on the account (Plaintiff Dep. 123:3-6), Plaintiff then admitted:  "So this particular reporting incident I was not late because [U.S. Bank] took responsibility.  *If you want to say that that the money actually got to them late, I guess that would be true*." (<u>Id.</u> 125:14-19 (emphasis added).)  Plaintiff again admitted to being delinquent in making payments for the U.S. Bank Account in the following exchange:

> **Q.**  Okay.  So to the best of your recollection this account was never past
>      due?

**A.** To the best of my recollection, it was never past due until this event, until they alerted me to it long after - - until it was reported.

**Q.** And you believe that the reporting is erroneous obviously, right?

**A.** Well, it was a mistake.  It's not that it – *it's not so much that it was wrong as it was a mistake by U.S. Bank.*

(Id. at 129:19-130:3 (emphasis added).)  Plaintiff continuously clarified that the allegation in her complaint that "Plaintiff has never made a late payment on the U.S. Bank account," (Compl. ¶ 7) was based on her belief that she "was making a proactive attempt to prevent being late" (Plaintiff Dep. at 129:15-18), and that the reason the delinquency occurred was that a U.S. Bank employee had failed to notify her of a balance on the U.S. Bank Account when Plaintiff had attempted to consolidate her credit accounts by paying off remaining balances (Id. at 130:15-131:7, 132:16-133:5, 134:4-135:9).  Nevertheless, despite purporting to have believed that the U.S. Bank Account had been paid in full, Plaintiff admits that she received a statement from U.S. Bank showing that she owed money on the U.S Bank Account, and that she decided to ignore it:

**Q.** Can you explain that?

**A.** Yes.  As far as I was concerned, the account was paid up and done.  A statement came in the mail.  I remember it arriving.  But because I had just finished paying it off, I concluded that it was a time lapse thing, that the statement was already in the mail and I was already paying it at the bank directly.

**Q.** Okay.

**A.** So I ignored it. . . .

(Id. at 138:4-13.)[5]

Plaintiff has repeatedly admitted that she cannot support the allegation in her Complaint that she "has never made a late payment on the U.S. Bank Account." (Compl. ¶ 7.)  Rather, she seeks to satisfy the inaccuracy element of her § 1681e(b) and § 1681i claims by confusing two separate issues:  1) whether the delinquency reported by Experian on the U.S. Bank Account was true, and 2) whether the fact that she was delinquent was actually her fault.  The latter issue, as exemplified by DeAndrade, Cornock, and Dauster, is one to be resolved between Plaintiff and U.S. Bank.  Regarding the first issue, however, there exists no disputed issue of material fact:  Plaintiff has admitted that she was delinquent on the account, and that she has no evidence contradicting the validity of the delinquent payment history reported by Experian. Accordingly, she cannot satisfy her burden of proving the inaccuracy element of her FCRA claims, and Experian is entitled to judgment as a matter of law.

**B.     Plaintiff Has Failed To Adduce Any Evidence Of Willfulness To Support Her Claim For Punitive Damages.**

Even if Plaintiff could somehow establish the inaccuracy element of her FCRA claims, which she cannot, she has failed to adduce any evidence to support her contention that Experian "willfully" violated §1681i and § 1681e(b).  (Compl. ¶¶ 18-19, 21.) A showing of willfulness is a prerequisite to the recovery of punitive damages under the

---

[5] Experian sought from Plaintiff the account statements for the U.S. Bank Account.  See Experian's First Set of Requests for Production of Documents to Plaintiff No. 11, attached as Exhibit F to Experian's Appendix of Affidavits and Exhibits filed contemporaneously with this Memorandum (requesting "[a]ll documents, including account statements, relating to [the U.S. Bank Account]).  Plaintiff never produced these documents, and, at her deposition, claimed that she had "absolutely no idea where the records would be."  (Plaintiff Dep. at 44:15-11; 137:19-23; see also Plaintiff's Supplemented Answers to Defendant Experian's Interrogatories No. 14, Appendix Exhibit E).

FCRA.  15 U.S.C. § 1681n; <u>see</u> <u>also</u> <u>McKinley v. CSC Credit Servs.</u>, No. 05-2340, 2007

U.S. Dist. LEXIS 34528, at *20-21 (D. Minn. May 10, 2007) (granting summary

judgment to credit reporting agency and holding that agency's knowing and intentional

decision not to forward proof document to creditor did not constitute a willful violation of

the FCRA); <u>Konter v. CSC Credit Servs.</u>, 606 F. Supp. 2d 960, 971 (W.D. Wis. 2009)

(granting summary judgment for credit reporting agency and holding that agency's

interpretation of "all relevant information" requirement of 1681i(a)(2)(A) as not requiring

it to forward to creditor all information regarding account ownership was not

unreasonable and could not be characterized as reckless).  To establish willfulness under

the FCRA, a plaintiff must, at the very least, show that the defendant's act constituted

reckless disregard of a requirement of the FCRA.  <u>Safeco Ins. Co. of Am. v. Burr</u>,

551 U.S. 47, 71 (2007).  To constitute reckless disregard, the action must not only be a

violation of the FCRA under a reasonable reading of the statute's terms, but must also

show that the defendant ran a risk of violating the law substantially greater than the risk

associated with a reading that was merely careless.  <u>Id.</u> at 69.  The Plaintiff bears the

burden of establishing that the credit reporting agency committed a "willful" or

"reckless" violation of the FCRA.  <u>Rambarran v. Bank of Am., N.A.</u>, 609 F. Supp. 2d

1253, 1270 (S.D. Fla. 2009).

Here, Plaintiff has failed to elucidate any evidence to support a finding of

willfulness.  To the contrary, in support of her § 1681n claim, she has merely reasserted

the allegations in her Complaint.  (<u>See</u> Plaintiff's Supplemented Answers to Defendant

Experian's Interrogatories No. 23, Appendix <u>Exhibit</u> <u>E</u> (providing, as the basis for

Plaintiff's allegation of willfulness, that the U.S. Bank Letter confirmed that Experian's

reporting should be corrected and that Experian provided no explanation for refusing to

accept the letter).)  When asked to explain her willfulness allegation at her deposition,

Plaintiff purported to base the claim on the heretofore wholly unsubstantiated notion that

Experian "ignored" her dispute:

> **Q.**  Okay.  Do you personally believe that Experian intended to cause you any harm?
>
> **A.**  I think that they were entirely negligent and willful in not caring if they did cause me any harm.
>
> **Q.**  They were willful and not caring.  Is that your testimony?
>
> **A.**  Well, I think there's a willfulness in ignoring something the same way as there's a willfulness in taking a positive stance.  Do I know these people personally?  No.  But the fact is that I've gone to a lot of effort and I had a very reasonable basis for objecting, for disputing this and they simply – they, I believe, willfully ignored it, yes.

(Plaintiff Dep. 188:2-16.)  Tellingly, Plaintiff made this statement just moments after

offering her belief that Experian, as they in fact did through the sending of an ACDV

(Hughes Aff. ¶ 17; Hughes Dep. at 25:19-21, 30:22-31:2 & Dep. Ex. 5), should have

contacted U.S. Bank and referenced the U.S. Bank Letter:

> **Q.**  So is it fair to say that you believe one of the ways that Experian could have dealt with this dispute properly would be to contact U.S. Bank and reference the [U.S. Bank Letter]?
>
> **A.**  That would be one way to find out whether or not the letterhead was a U.S. Bank letterhead, that I hadn't made it up, that the person signing it was a U.S. Bank manager and I hadn't made them up and that U.S. Bank – you know, because it's not an affidavit, it's a letter.  I understand that.  If they want to verify it, that's fine but I don't think they did.

(Plaintiff Dep. at 187:4-16.)

Plaintiff's restatement of her own conclusory allegations regarding willfulness is insufficient to create a genuine issue of material fact on the issue.  Aside from lacking evidentiary support, Plaintiff's § 1681n claim is further undercut by the fact that Experian did precisely what she apparently believes it should have done in reinvestigating her dispute.  As a result, Plaintiff has no viable claim for punitive damages, and Experian is entitled to summary judgment on her § 1681n claim.

## V.      CONCLUSION

For all of the reasons stated above, Experian respectfully requests that this grant Experian's Motion for Summary Judgment.

Dated:  February 1, 2011                    Respectfully submitted,


s/Michael S. Poncin
Michael S. Poncin #296417
E-mail:  poncinm@moss-barnett.com
James R. Bedell, #351544
E-mail:  bedellj@moss-barnett.com
MOSS & BARNETT, P.A.
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4129
Telephone:  (612) 877-5000
Facsimile:   (612) 877-5999

Seth J. Linnick
E-mail:  sjlinnick@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Attorneys for Defendant
Experian Information Solutions, Inc.