```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 09-1102(DSD/AJB)
```

Carla Paul,

        Plaintiff,

v.                                                              **ORDER**

Experian Information
Solutions, Inc.,

        Defendant.

    Trista M. Roy, Consumer Justice Center PA, 367 Commerce Court, Vadnais Heights, MN 55127 and Thomas J. Lyons, Lyons Law Firm P.A., 367 Commerce Court, Vadnais Heights, MN 55127, counsel for plaintiff.

    Michael S. Poncin, Esq., James R. Bedell, Esq. and Moss & Barnett, PA, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402 and Seth J. Linnick, Esq. and Jones Day, 901 Lakeside Avenue, Cleveland, OH 44114, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Experian Information Solutions, Inc. (Experian) and the motion for partial summary judgment by plaintiff Carla Paul. Based on a review of the file, record and proceedings herein, the court grants Experian's motion.

**BACKGROUND**

This Fair Credit Reporting Act (FCRA) dispute arises out of a credit report issued by Experian, a credit-reporting agency (CRA). Beginning in January 2007, Paul opened "a multitude of accounts with" U.S. Bancorp (U.S. Bank). Paul Dep. 116:4-117:1. In early

2008, Paul decided that she had "too many debit and credit cards," and went to a U.S. Bank branch to pay outstanding balances and close many of the accounts. Id. at 118:8-20, 121:19-21. Carol Jorgenson, the U.S. Bank representative assisting Paul, informed Paul that she "was totally current, paid up, and the accounts were closed." Id. at 130:11-13. In fact, one credit account still had a balance but Jorgenson "hadn't brought this outstanding amount to [Paul's] attention." Id. at 131:3-5.

In April 2008, Paul noticed a negative entry on a credit report generated by Experian based on late payments on the U.S. Bank credit card account. Compl. ¶ 6. According to Paul, she "was not late [with payments] because the bank took responsibility .... If you want to say that the money actually got to [U.S. Bank] late, I guess that would be true. But I think in terms of responsibility, I did not make a late payment." Paul Dep. 125:15-20. She further stated: "it's a matter of knowledge ... I wasn't aware of this payment being due, so as far as I was concerned, it was never late." Id. at 126:1-3.

Paul contacted Jorgenson at the U.S. Bank branch to dispute the late payments. Compl. ¶ 8. On May 6, 2008, Damon Laliberte, a U.S. Bank branch manager, sent Paul a letter addressed "To Whom It May Concern" and stating:

> Any negative credit bureau reporting made by
> U.S. Bank N.A. on account [redacted] in the
> name of Carla A. Paul is the result of bank
> error. This account should never have been

>     reported as past due.  Please remove any late
>     payment reporting.

Hughes Dep. Ex. 2. On May 30, 2008, Paul sent a letter to Experian disputing the negative entry and enclosed the letter from Laliberte. Paul Dep. Ex. 10. At the time of Paul's dispute letter, U.S. Bank was reporting to Experian that Paul's account was past due. Hughes Aff. ¶ 29.

Upon receiving Paul's dispute letter, Experian reviewed the letter from Laliberte to determine if it could "authenticate and use the document on its face." Hughes Dep. 37:20–22. Experian determined that the letter could not be used on its face to change the status or payment history reported by U.S. Bank. Hughes Second Aff. ¶ 19.[1]

When a consumer disputes an item on a credit report, Experian sends the creditor an Automatic Consumer Dispute Verification (ACDV) which identifies the consumer and the basis of the dispute and asks the creditor to verify the information reported. Hughes Aff. ¶ 11. The creditor then returns the ACDV to Experian with instructions to delete, correct or leave the item on the credit report. Id. Experian removes the disputed item if the ACDV is not returned within a reasonable time, does not verify Experian's information or contains unreliable information. Id.

---

[1] Experian submitted two affidavits from Kimberly Hughes, the first dated January 28, 2011, and the second dated March 21, 2011. See ECF Nos. 31, 42-2. The court refers to the March 21, 2011 affidavit as "Hughes Second Aff."

On June 9, 2008, after determining that it could not use Laliberte's letter on its face, Experian sent an ACDV to U.S. Bank. Id. ¶ 17. Under "Dispute Reason," Experian stated: "106– Disputes/ previous Account Status, History.  Verify Accordingly.  LTR FROM DAMON LALIBERTE SAYING ACCT SHOULD NEVER HAVE BEEN PAST DUE. CONTACT 651-466-8360." Id.  On June 18, 2008, U.S. Bank responded that the account was paid in full, but that delinquencies reported for August through October 2007 were accurate. Id. ¶ 18. Experian then changed Paul's credit report in accordance with this information, and sent the results to Paul. Id. ¶¶ 19-20. In a November 5, 2008, credit report, Experian listed the U.S. Bank account as "Status: Paid, Closed/Current, was past due 60 days." Roy Aff. Ex. A.  The credit report was shared with several companies. Id.

On May 11, 2009, Paul filed this action, alleging that Experian[2] willfully and/or negligently violated 15 U.S.C. §§ 1681e(b) and 1681i(a) by failing to employ reasonable procedures to assure accuracy in Paul's consumer credit report and failing to conduct a reasonable investigation and remove inaccurate information from Plaintiff's credit file.  Experian moves for summary judgment and Paul moves for partial summary judgment with respect to liability.  The court now considers the motions.

---

[2] U.S. Bank was also named as a defendant, but Paul's claims against U.S. Bank were dismissed with prejudice pursuant to a stipulation of the parties. See ECF No. 16.

4

**DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson v. City of Rochester, No. 09-1131, 2011 WL 2135636, at *7 (8th Cir. June 1, 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

On a motion for summary judgment, the court views all evidence and inferences as to which there is a genuine dispute in a light most favorable to the nonmoving party. See Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009). The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 2011 WL

2135636, at *7.  Moreover, if a plaintiff cannot support each essential element of her claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.   The FCRA

Congress enacted the FCRA in 1970 to "ensure fair and accurate credit reporting, promote efficiency in the banking system and protect consumer privacy."  Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (citation and internal quotation marks omitted).  CRAs are not strictly liable for inaccuracies contained in credit reports.  Hauser v. Equifax, Inc., 602 F.2d 811, 814–15 (8th Cir. 1979).

### A.   Section 1681e(b)

A CRA must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To prevail on a claim under § 1681e(b), Paul must present evidence that (1) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) reported inaccurate credit information about her, (3) she suffered harm and (4) Experian's failure to follow reasonable procedures was the cause of her harm.  See Gohman v. Equifax Info. Servs., LLC, 395 F. Supp. 2d 822, 826 (D. Minn 2005); Reed v. Experian Info. Solutions, Inc., 321 F.

Supp. 2d 1109, 1113 (D. Minn. 2004); Cf. Hauser, 602 F.2d at 815-16; Schmitt v. Chase Manhattan Bank, N.A., No. 03-3295, 2005 WL 2030483, at *3 (D. Minn. Aug. 23, 2005).

As an initial matter, Paul cannot meet her prima facie burden to show that Experian failed to follow reasonable procedures to assure maximum accuracy. Paul argues that Experian's summary of the three-sentence Laliberte letter "completely fails to do the US [sic] Bank letter justice." The court disagrees. Experian responded to Paul's dispute by notifying U.S. Bank and telling U.S. Bank "LTR FROM DAMON LALIBERTE SAYING ACCT SHOULD NEVER HAVE BEEN PAST DUE. CONTACT 651-466-8360." U.S. Bank conducted an investigation and responded to Experian. Experian conformed the report to U.S. Bank's response. Paul's unsupported conjecture that sending the letter to U.S. Bank would have led to greater report accuracy has no basis. Moreover, no reasonable jury could find that Experian failed to follow reasonable procedures by requesting that U.S. Bank investigate the dispute. Therefore summary judgment in favor of Experian is warranted on this basis alone.

Even if Paul had shown that Experian failed to follow reasonable procedures to assure maximum accuracy, Paul fails to show that Experian reported inaccurate credit information. Paul first argues that she has no duty to show that inaccurate information was included in the consumer report and that Experian's "myopic focus on technical accuracy is misplaced." Pl.'s Mem. 6.

The court disagrees. The Eighth Circuit has held that mere inaccuracy is not sufficient to create liability under § 1681e(b); instead, a plaintiff must show that the inaccuracy resulted from the CRA's failure to "follow reasonable procedures to assure maximum possible accuracy." Hauser, 602 F.2d at 814-15. Implicit in this holding is the requirement that the information is inaccurate. Moreover, courts in this district have repeatedly held that a plaintiff bears the burden to show inaccurate information to establish a prima facie case under § 1681e(b). See, e.g., Gohman, 395 F. Supp. 2d at 826; Reed, 321 F. Supp. 2d at 1113; Schmitt, 2005 WL 2030483, at *3.

Paul admits that payments "actually got to [U.S. Bank] late" but argues that Experian should not have reported the payments as late because they were due to bank error. The court disagrees. First, Paul provides no persuasive authority to support this argument. Moreover, the reason for the late payment is not relevant; the statute concerns accuracy. Paul "insists that Defendant has not shown that the reported information was substantively or technically accurate," but offers no authority for shifting this burden to Experian. See Pl.'s Mem. Opp'n 6. Paul bears the burden to establish her prima facie showing. Therefore Paul's argument fails.

Paul next argues that even if the information were accurate, a reasonable jury could find the information so misleading as to be

inaccurate.  See Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C. Cir. 1984) ("[R]eports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.").  In Koropoulos, the consumer defaulted on a loan and then later repaid the debt through a collection agency.  Id. at 39.  The CRA reported the event such that it appeared that the consumer never repaid the loan.  Id.  The present case differs. Even if U.S. Bank were mistaken that Paul had paid all of her debts in early 2008, Paul fails to show how this mistake relates to the delinquency in August to October 2007.  Experian reported the account as "Paid, Closed/Current, was past due 60 days."  Nothing in the record would allow a reasonable juror to find this statement so misleading as to be inaccurate.[3]  Therefore, this argument fails.

Further, summary judgment is warranted because Paul also fails to meet other elements of her prima facie burden, including that she suffered harm caused by Experian's failure to follow reasonable procedures.  She offers no evidence to show that the outcome of the reinvestigation would have been different if Experian had forwarded

---

[3] Moreover, Experian has no obligation under the FCRA to include Laliberte's letter in Paul's credit report or otherwise indicate that Paul disputed the accuracy of the report. Paul, not Experian, has the obligation to request that her credit report reflect that she disputed certain information.  See 15 U.S.C. § 1681i(a)(6)(b)(v).

9

the Laliberte letter to U.S. Bank.[4]  Further, although Experian sent credit reports containing the late payment history to several potential creditors, see Roy Aff. Ex. A, Paul fails to demonstrate any negative repercussions, or any actual injury, connected with the publication of the credit reports.  Therefore, summary judgment in favor of Experian is warranted on this claim.

### B. Section 1681i

If a consumer disputes the information contained in a credit report, the CRA must "reinvestigate and confirm ... the disputed information." Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004) (citing 15 U.S.C. § 1681i(a)(1)(A)). The CRA does so by "notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the consumer." Id. (citing 15 U.S.C. § 1681i(a)(2)(A)-(B)).

Paul again argues that "the technical accuracy of the information" on the credit report "is not critical" to this claim. Pl.'s Mem. Opp'n 10.  The court disagrees.  "The weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought

---

[4] Paul asserts that forwarding the letter to U.S. Bank "would have most certainly resulted in a different approach by US Bank, the furnisher, and a different outcome." Paul provides no evidentiary basis for this assertion, and her conclusory allegations are not sufficient to establish a genuine dispute of material fact.  As a result, no reasonable juror could agree with that statement.

under § 1681i must fail." DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008) (citing Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008)); Kuehling v. Trans Union, LLC, 137 F. App'x 904, 908 (7th Cir. 2005); see also Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010) (inaccuracy essential element of claim against furnisher under 15 U.S.C. § 1681s-2).[5]  Paul fails to show that the information is inaccurate.[6]  Therefore, this claim also fails.

Even if Paul had met her burden to show the information was inaccurate, Paul presents no evidence to create a dispute over whether that Experian failed to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." See 15 U.S.C. § 1681i(1)(A). As an initial matter,

---

[5] The court finds these cases persuasive and rejects Paul's attempt to distinguish them as inapposite. Paul argues that DeAndrade is distinguishable because the plaintiff in that case "did not provide any documentation from the lending bank verifying the legitimacy of his dispute or confirming the negative history was inaccurate" and "[i]n the instant case, there was a question of factual accuracy." Pl.'s Mem. Opp'n 8. Plaintiff argues that Kuehling is distinguishable because the plaintiff's claim was "essentially a train wreck." Id. These distinctions are irrelevant. Paul attempts to distinguish Edeh because the plaintiff brought his claim against the furnisher pursuant to § 1692s-2(b) and "was mistaken about the alleged inaccuracy of his credit report." Id. at 9. In Edeh, the court relied on the reasoning of DeAndrade and Kuehling, both of which relate to claims against CRAs under § 1681i. See Edeh, 748 F. Supp. 2d at 1039-40. Moreover, the fact that the plaintiff was mistaken about the accuracy of his report is irrelevant.

[6] Paul again argues that the data reported by Experian was so misleading that it should be considered inaccurate. For the reasons stated, the court rejects this argument.

Paul repeatedly refers to Experian's duty to conduct an investigation. This assertion misstates the statute and conflates a CRA's obligation to reinvestigate and a furnisher's obligation to investigate. Compare 15 U.S.C. § 1681i(a) (CRA must conduct reinvestigation) with id. § 1681s-2(a)(8)(E) (furnisher must conduct investigation). "[T]he furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to 're investigate'...." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156-57 (9th Cir. 2009). Therefore, Paul's reference to the Black's Law Dictionary definition of "investigation" is irrelevant. See Pl.'s Mem. Supp. 8 n.6.

Paul argues that Experian failed to "include all relevant information regarding the dispute" because it did not forward the letter from Laliberte to U.S. Bank. The court disagrees. The undisputed record shows that Experian's ACDV included all relevant information regarding the dispute; no reasonable juror could find otherwise. No language in the statute requires a CRA to forward documents to data furnishers to satisfy its obligation. See Fed. Trade Comm'n, Report to Congress on the Fair Credit Reporting Act Dispute Process 34 (Aug. 2006) (CRA practice of summarizing documents submitted by consumers is sufficient in most cases); see

12

also Morris v. Trans Union LLC, 420 F. Supp. 2d 733, 753 (S.D. Tex. 2006) (defendant not required to include copy of plaintiff's dispute letter to satisfy "all relevant information requirement"); Davis v. Equifax Info. Servs. LLC, 346 F. Supp. 2d 1164, 1176 (N.D. Ala. 2004) (rejecting plaintiff's argument that "mere electronic communication is insufficient to comply with § 1681i(a)(2)(A)"). The summary by Experian identified the alleged author of the letter and the nature of its contents.[7] No reasonable jury could find that Experian failed accurately and completely to summarize the letter from Laliberte, and therefore complied with its obligation under § 1681i.[8] Therefore, summary judgment in favor of Experian is warranted on this claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [ECF No. 28] is granted; and

2. Plaintiff's motion for partial summary judgment [ECF No.

---

[7] Paul argues that the summary did not indicate that Laliberte is a branch manager. However, U.S. Bank should know who its own branch managers are.

[8] The court rejects Paul's argument that Experian violated § 1681i because it "arbitrarily chose to rely on one of two pieces of contradictory information from U.S. Bank." Pl.'s Mem. Opp'n 6. Experian had no obligation under the FCRA to accept Laliberte's letter on its face, and no reasonable jury could find that Experian acted unreasonably by relying on information received directly from U.S. Bank rather than a copy of a letter supplied by a consumer.

33] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 22, 2011

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court